**2009 BNH 021**    Note:  This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 04-10701-JMD |
| | Chapter 7 |
| Gopalan Narayanan and | |
| Vimala Narayanan, | |
|       Debtors | |
| | |
| Gopalan Narayanan, | |
|       Plaintiff | |
| | |
| v. | Adv. No. 08-1073-JMD |
| | |
| New Hampshire Higher Education Assistance | |
| Foundation (NHHEAF), | |
| United States Department of Education, and | |
| Educational Credit Management Corporation, | |
|       Defendants | |

*Leonard G. Deming, II, Esq.*
*Deming Law Office*
*Nashua, New Hampshire*
*Attorney for Debtors/Plaintiff*

*Clifford P. Gallant, Jr., Esq.*
*Beliveau, Fradette, Doyle & Gallant, P.A.*
*Manchester, New Hampshire*
*Attorney for Defendant New Hampshire Higher Education Assistance Foundation*

*Christopher J. Pyles, Esq.*
*Wiggin & Nourie, P.A.*
*Manchester, New Hampshire*
*Attorney for Defendant Educational Credit Management Corporation*

### **MEMORANDUM OPINION**

### I.  INTRODUCTION

Gopalan Narayanan (the "Debtor") filed a complaint seeking to except from discharge under 11 U.S.C. § 523(a)(8) various educational loans he obtained in the late 1990s to finance

the education of his children.  After a hearing on various motions seeking summary judgment, the Court granted the motion of the United States Department of Education, finding its student loan should not be discharged.  The Court conducted a trial on June 23, 2009, regarding the dischargeability of the Debtor's remaining educational loans held by New Hampshire Higher Education Assistance Foundation ("NHHEAF") and Educational Credit Management Corporation ("ECMC") and took the matter under advisement.  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

### A.  Personal Background

The Debtor is sixty-one years old and is married to Vimala Narayanan who is fifty-five years old (together, the "Debtors").  The Debtor received an undergraduate degree in mechanical engineering in 1969 and a master's degree in business management in 1972, both in India.  His wife received an undergraduate degree in economics in 1972 in India.  The couple moved from India to the United States in 1980.

The Debtor and his wife have two adult children, a thirty-one year old daughter and a twenty-nine year old son.  The daughter obtained an undergraduate degree from Simmons College in 2002.  She currently works in the Boston area and lives at home with her parents in Nashua, New Hampshire.  She makes no contribution to pay for household expenses.  The couple's son never finished college.  He is currently serving a one-to-three-year prison sentence

for assault in a New Hampshire state prison. The Debtors' son has been arrested many times since high school and has been unable to hold a steady job. The Debtor and his wife testified their son has medical issues, and they have continued to support him since his graduation from high school in 1997, by paying rent for his own apartment, buying him a car, and paying food and other living expenses, including legal and medical bills. Prior to his imprisonment in November 2008, the Debtors were purportedly spending $600.00 per month for his care;[1] they currently send him $60.00 per month to cover his incidental expenses while in prison. The Debtors' son may be released as soon as November 2009. The Debtors intend to continue to support him despite having no legal obligation to do so.

### B. Loan and Repayment History

Between August 29, 1996, and September 16, 1998, the Debtor executed a series of five promissory notes, totaling $97,696.00, to finance his children's educations:

| Loan No. | Current Holder | Loan Date | Amount Borrowed | Repayment to Begin |
|---|---|---|---|---|
| 1 | ECMC | 8/29/96 | $23,000.00 | 1/17/97 |
| 2 | NHHEAF | 8/4/97 | $22,245.00 | 3/11/98 |
| 3 | ECMC | 8/31/97 | $23,365.00 | 2/2/98 |
| 4 | ECMC | 6/29/98 | $3,086.00 | 9/11/98 |
| 5 | ECMC | 9/16/98 | $26,000.00 | 4/14/99 |

---

[1] Checks submitted to document those expenses do not support a monthly expense item in that amount. The checks show payments reflecting support of their son of approximately $24,000.00 since 1996. Averaging these payments over eleven years, i.e., since their son reached the age of majority, results in expenses of $2,182.00 per year, or $182.00 per month. The Debtors testified, however, that they have given their son money and paid cash for some expenses.

3

The evidence shows the Debtor made $6,884.03 in voluntary payments toward these loans from 1997 through 2001:

| Loan No. | Current Holder | Dates of Voluntary Payments | Amount of Voluntary Payments |
|---|---|---|---|
| 1 | ECMC | 1/20/97 | $21.43 |
| 2 | NHHEAF | 3/6/98 to 1/10/01 | $5,642.75 |
| 3 | ECMC | Unknown | $69.70 |
| 4 | ECMC | 4/29/99 to 6/1/01 | $1,150.15 |
| 5 | ECMC | N/A | $0 |

The Debtor received seven deferments for Loan 5.  He also applied for and received the following forbearances:

| Loan No. | Current Holder | Forbearances[2] |
|---|---|---|
| 1 | ECMC | 20 months |
| 2 | NHHEAF | 47 months |
| 3 | ECMC | 78 months |
| 4 | ECMC | 48 months |
| 5 | ECMC | 29 months |

In 2004, the Debtor filed bankruptcy; he did not institute an adversary proceeding against the student loan lenders at that time.  He received a chapter 7 discharge on November 2, 2004, and his bankruptcy case was closed.

---

[2] The dates of the forbearances were not introduced into evidence.

The Debtors' loans were placed in default as follows:

| Loan No. | Current Holder | Default Date |
|---|---|---|
| 1 | ECMC | 1/13/06 |
| 2 | NHHEAF | 1/26/06 |
| 3 | ECMC | 2/12/06 |
| 4 | ECMC | 2/12/06 |
| 5 | ECMC | 3/13/03 |

In 2006 and 2007, payments on Loans 3, 4, and 5, totaling $6,422.98, were obtained through a setoff of the Debtor's income tax refunds for those years:

| Loan No. | Current Holder | Dates of IRS Setoff Payments | Amount of IRS Setoff Payments |
|---|---|---|---|
| 1 | ECMC | N/A | $0 |
| 2 | NHHEAF | N/A | $0 |
| 3 | ECMC | 5/25/07 | $2,153.52 |
| 4 | ECMC | 5/25/07 | $177.46 |
| 5 | ECMC | 4/21/06 | $4,092.00 |

In 2008, ECMC garnished the Debtor's wages as follows:

| Loan No. | Current Holder | Dates of Wage Garnishment Payments | Amount of Wage Garnishment Payments |
|---|---|---|---|
| 1 | ECMC | N/A | $0 |
| 2 | NHHEAF | N/A | $0 |
| 3 | ECMC | 1/29/08 to 6/10/08 | $2,918.72 |
| 4 | ECMC | 1/29/08 to 6/10/08 | $246.17 |
| 5 | ECMC | N/A | $0 |

On May 9, 2008, the Debtor filed a motion seeking to reopen his bankruptcy case, which the Court granted. Shortly thereafter, on May 26, 2008, the Debtor filed a complaint seeking to discharge his student loans. The parties agree that the outstanding student loan debt totals $212,798.14 and consists of the following balances:

| Loan No. | Current Holder | Total Due |
|---|---|---|
| 1 | ECMC | $57,484.00 |
| 2 | NHHEAF | $41,552.14 |
| 3 | ECMC | $55,635.67 |
| 4 | ECMC | $4,668.67 |
| 5 | ECMC | $53,457.66 |

NHHEAF proposes that the Debtor repay Loan 2 with 5.67% interest by making sixty monthly payments of $780.00. ECMC has indicated it is willing to assist the Debtor in applying to the William D. Ford Repayment Program and believes that Loans 1, 3, 4, and 5 could be consolidated at an annual interest rate of 5.25% with one of three payment options being available: (1) making 360 monthly payments of $871.80 under the standard repayment plan; (2) making 300 monthly payments of $690.71 under the extended plan; or (3) making ongoing payments of $532.50 under the income contingent plan.

**C. The Debtors' Income and Employment History**

Between 1990 and 2001, the Debtor worked as an information technology subcontractor for Digital Equipment Corporation, earning a full time hourly wage of $41.00 per hour in 1990 (or $85,280.00 on an annual basis) and $63.00 per hour in 2001 (or $131,040.00 on an annual basis). The Debtor was laid off in April 2001, however, and did not return to work in the information technology field until 2004. Between 2004 and 2009, the Debtor performed contract

work for various companies. He has often been employed only six to ten months during any given year. The Debtor's income, including unemployment compensation, has been as follows:

| Year | Wages | Other Income | Total |
|------|-------|--------------|-------|
| 2004 | $52,062.00 | $217.00 | $52,279.00 |
| 2005 | $57,614.00 | $6,266.00 | $63,880.00 |
| 2006 | $56,158.00 | $9,315.00 | $65,473.00 |
| 2007 | $43,246.00 | $12,498.00 | $55,744.00 |
| 2008 | $66,249.00 | $9,933.00 | $76,182.00 |

Over these last five years, the Debtor has had an average annual income of $61,815.00 and average monthly income of $5,151.22. In the period leading up to trial, the Debtor was earning $31.50 per hour working a reduced schedule of thirty-two hours per week, which is $52,416.00 on an annual basis and $4,368.00 on a monthly basis. Just a few days before trial the Debtor's contract was terminated. He is currently unemployed. Through June 6, 2009, the Debtor had earned $33,831.00, or an average of approximately $6,444.00 per month for 2009.[3]

The Debtor's wife has never been employed since arriving in the United States. After the couple's children graduated from high school in the late 1990s, she began taking computer science courses at Daniel Webster College. She applied for one job in the early 2000s but was not hired. She has made no further attempts to obtain employment.

### D. The Debtors' Expenses

The Debtors submitted a list of current expenses in advance of trial that included the following items, as set forth below, some of which are challenged by NHHEAF and ECMC and some of which are no longer accurate according to the Debtors' testimony at trial:

---

[3] The Debtor's pay stub for the period ending June 6, 2009, reflects the Debtor earned over $4,000.00 in overtime during 2009.

| Expense Item | As Shown on 2009 Sch. J | As Adjusted at Trial by Debtors | As Challenged by Lenders |
|---|---|---|---|
| Mortgage | $1,456.00 | | |
| Electricity and heating fuel | $125.00 | Should be $200.00 | |
| Water and sewer | $57.00 | | |
| Telephone | $175.00 | | Should be $75.00 |
| Home maintenance | $200.00 | | |
| Food | $500.00 | | Should be $360.00 |
| Clothing | $100.00 | | |
| Laundry and dry cleaning | $120.00 | | Should be less |
| Medical and dental expenses | $250.00 | Should be $0 | |
| Transportation | $300.00 | | |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $20.00 | | |
| Charitable contributions | $86.00 | | Should be $0 |
| Auto insurance | $103.00 | | |
| Auto installment payments | $455.00 | | Should be less |
| Payments for support of additional dependents not living at your home | $600.00 | Should be $60.00 while son is in prison | Should be $0 |
| Wife's credit card bills | $0 | Amount not disclosed | |
| Totals | $4,547.00 | $3,832.00 plus wife's credit card payments | $3,621.00 less laundry and auto adjustments |

### E. The Debtors' Assets

At the time the Debtor was laid off in 2001, the Debtors had an estimated $80,000.00 to $85,000.00 in bank and mutual fund accounts. The Debtors testified that they lived off that money, to the extent it was not lost during the downturn in the stock market, while the Debtor was unemployed and underemployed between 2001 and 2004. More recently, between March 2008 and September 2008, the balance in the Debtors' bank account has fluctuated from approximately $10,000.00 to $18,000.00, reflecting an ability to accumulate cash from the Debtor's earnings. On the day of trial, the Debtors indicated their checking account held $3,130.00 and their savings account held $1,500.00. The Debtors have no retirement accounts or pension funds.

The Debtors' remaining assets consist of general household items, two cars (the newest purchased in 2005 for $22,500.00), and a home in Nashua, New Hampshire. The Debtors purchased their home for $180,000.00 in 1992, and they currently value it between $260,000.00 and $280,000.00. Between 1992 and October 2003, the Debtors paid down their mortgage from $170,000.00 to approximately $46,000.00. The Debtors refinanced their mortgage in October 2003, and borrowed $85,000.00. That mortgage has been paid down to $65,000.00.

## III. DISCUSSION

Under § 523(a)(8) of the Bankruptcy Code, a debtor is not permitted to discharge educational loans unless excepting the loans from discharge "would impose an undue hardship on the debtor and the debtor's dependents." In determining what constitutes undue hardship this Court has previously decided to follow the three-part test set forth in <u>Brunner v. New York State Higher Educ. Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987). See, e.g., <u>McClain v. Am. Student Assistance (In re McClain)</u>, 272 B.R. 42, 47 (Bankr. D.N.H. 2002); <u>Grigas v. Sallie Mae</u>

Servicing Corp. (In re Grigas), 252 B.R. 866, 874 (Bankr. D.N.H. 2000).  Under Brunner, student loan obligations impose an undue hardship within the meaning of the statute, and can be discharged, if:

> A. The debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loan;
>
> B. Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and
>
> C. The debtor has made good faith efforts to repay the loan.

Brunner, 831 F.2d at 396; McClain, 272 B.R. at 47; Grigas, 252 B.R. at 874; Garrett v. New Hampshire Higher Educ. Assistance Found. (In re Garrett), 180 B.R. 358, 362 (Bankr. D.N.H. 1995).

The creditor bears the initial burden of proving the existence of the debt and that the debt is of the type excepted from discharge under § 523(a)(8).  Educ. Credit Mgmt. Corp. v. Savage (In re Savage), 311 B.R. 835, 839 (B.A.P. 1st Cir. 2004).  Once the creditor satisfies that burden, the burden shifts to the debtor to prove by a preponderance of the evidence that excepting the student loan debt from discharge will cause the debtor and his dependents "undue hardship" under the Code.  Id.  The parties do not dispute the existence of NHHEAF's and ECMC's loans or that their loans are of the type described in § 523(a)(8).  Accordingly, the Debtor has the burden to demonstrate the existence of all three Brunner factors in order to obtain a discharge of NHHEAF's and ECMC's student loans.  See Brunner, 831 F.2d at 396.

### A. Good Faith Efforts to Repay

Under the Brunner test the Court must determine whether the Debtor has made good faith efforts to repay the loans currently held by NHHEAF and ECMC.  The record reflects the Debtor did make some voluntary payments on two of his loans between 1997 and 2001 before losing his

long-standing job with Digital Equipment Corporation. On Loan 2, the Debtor made approximately thirty-three monthly payments totaling $5,642.75 between March 1998 and January 2001 and obtained a forty-seven month forbearance; and on Loan 4, the Debtor made approximately twenty-seven monthly payments totaling $1,150.15 between April 1999 and June 2001 and obtained a forty-eight month forbearance. The Debtor failed to make payments or made only token payments on Loans 1, 3, and 5. On Loan 1, the Debtor made only a single payment of $21.43 on January 20, 1997, and obtained only a twenty-month forbearance; on Loan 3, the Debtor made only a single payment of $69.70 and obtained a seventy-eight month forbearance; and on Loan 5, the Debtor made no voluntary repayments and obtained only a twenty-nine month forbearance.

      The record reflects that the Debtor has made no voluntary payments on any of his student loans since 2001, despite having earned an average annual income of $61,815.00 between 2004 and 2008. Since 2001, the Debtors' bank and mutual fund accounts have had balances ranging from $4,600.00 to $85,000.00, with the accounts fluctuating between $10,000.00 and $18,000.00 for much of last year. The evidence demonstrates that the Debtor has the ability to save significant money even though he experiences periods of unemployment from time to time. Despite having accumulated significant savings over the past eight years, the Debtor did not make a single voluntary payment on any of his student loans during that time.

      In addition, the Debtor has failed to introduce any evidence that would demonstrate he made any significant effort to restructure his loans to accommodate the fluctuating nature of his income. Cf. Grigas, 252 B.R. at 875 ("[T]he Debtor introduced substantial evidence indicating that she has made significant efforts in seeking a restructuring of her loans to accommodate her meager resources."). It appears the Debtor stopped making payments when he lost his job in

11

2001, and never made any serious attempts thereafter to deal with his student loan debt. He never resumed making payments upon becoming re-employed in the information technology field in 2004, earning an average income of over $60,000.00 per year. Rather, it was only after ECMC began garnishing his wages in 2008 that the Debtor reopened his 2004 bankruptcy case and filed the instant action requesting NHHEAF's and ECMC's loans be discharged.

The Debtor has failed to prove that he has made any good faith effort to repay Loans 1, 3, and 5. Since 2001, despite high average annual income and a demonstrated ability to save money from that income, the Debtor has made no voluntary payments on any of the loans. Even if the Court were to find that the Debtor made a good faith effort to repay Loans 2 and 4, between 1998 and 2001, the absence of payments after 2001 demonstrates a lack of good faith effort on those loans as well. Accordingly, the Court cannot find that the Debtor has made a good faith effort to repay any of his student loans.

### B. Ability to Maintain a Minimal Standard of Living

Under Brunner, the Debtor must also demonstrate that he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loan. In other words, the Debtor must prove that after maximizing his income and minimizing his expenses he still be would be unable to repay his student loans and maintain a minimal standard of living. Gallagher v. Educ. Credit Mgmt. Corp. (In re Gallagher), 2006 BNH 003, at 5. Without analyzing all of the Debtor's expenses, and the challenges made by NHHEAF and ECMC, the record reflects that the Debtor is able to generate surplus income every month, as evidenced by the Debtors' monthly bank balances, which included balances of $10,000.00 to $18,000.00 during last year. Instead of accumulating savings each month, the Debtor can and should be using that money to pay NHHEAF and ECMC. NHHEAF has proposed a monthly

12

payment amount of $780.00 for Loan 2 over five years.  ECMC has suggested that monthly payments on Loans 1, 3, 4, and 5, combined, could be reduced under a federal repayment program to a payment of no more than $871.80 per month and as low as $532.50 per month.  The Debtor has not demonstrated that his average earnings are insufficient to pay the student loans and maintain a minimal standard of living for himself and his wife.

In addition, the Debtors maintain a home with substantial equity.  During the period when the Debtor was failing to make student loan payments, he paid down his mortgage $20,000.00.  The Debtors' home is worth between $260,000.00 and $280,000.00, and the Debtor only owes $65,000.00 on his mortgage.  So, the Debtor's home provides the Debtor with some financial security.

For these reasons, the Court finds that the Debtor has not met his burden under this factor of the Brunner test as the record does not support a finding that the Debtor is unable to maintain a minimal standard of living if forced to repay the student loans.

### C.  Permanent or Indefinite Hardship

The last issue for the Court to determine is whether additional circumstances exist indicating that the Debtor's state of affairs is likely to persist for a significant portion of the repayment period of the student loans.  In describing this prong of the Brunner test, courts have stated that there must be a "hopelessness for the indefinite future as to any possibility of repayment."  Keilig v. Massachusetts Higher Educ. Assistance Corp. (In re LaFlamme), 188 B.R. 867, 870 (Bankr. D.N.H. 1995).  The Debtor has not demonstrated a current inability to make payments to NHHEAF and ECMC nor has he shown that his financial situation will be materially different in the future from what it has been for the past few years.  While the Debtor's employment contract was recently terminated, and the Debtor is getting older, the record

contained no evidence that the Debtor will not be able to obtain a similar contract job in the next few months.  Rather, the record demonstrates that the Debtor often has had periods of unemployment followed by periods of employment making significant money in the information technology field.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that the Debtor has not satisfied his burden of demonstrating that the repayment of his student loan debt would impose an undue hardship within the meaning of 11 U.S.C. § 523(a)(8).  Accordingly, Count I of the complaint against NHHEAF shall be denied and Counts II and IV of the complaint against ECMC shall also be denied.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   August 3, 2009                           /s/ J. Michael Deasy
                                                 J. Michael Deasy
                                                 Bankruptcy Judge